## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JESUS A. LEZCANO, Sr.

Plaintiff,

v.

ONEMAIN GENERAL SERVICES CORPORATION, a Delaware corporation, ONEMAIN FINANCIAL SERVICES, INC., a Delaware corporation, and ONEMAIN HOLDINGS, INC., a Delaware corporation,

Defendants.

---

## COMPLAINT WITH DEMAND FOR JURY TRIAL

Plaintiff Jesus A. Lezcano, Sr., by and through his attorneys, Robin Cochran and Richard Blundell, for his Complaint and Jury Demand against Defendants OneMain General Services Corporation, OneMain Financial Services Inc, and OneMain Holdings, Inc., (hereinafter known collectively as "Defendants" or "OneMain"), respectfully alleges as follows:

### I.  NATURE OF THE CASE

1.      Plaintiff's brings this employment discrimination, civil rights action and contract action against Defendants OneMain General Services Corporation, OneMain Financial Services Inc, and OneMain Holdings, Inc., for equitable and remedial relief and compensatory damages to redress Defendants' deprivation of his employment-related civil rights secured to him by the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), the Colorado Anti-Discrimination Act ("CADA"), C.R.S 24-34-401, *et. seq*., and 42 U.S.C. § 1981. While Plaintiff was employed by the Defendants, they permitted an overtly hostile, abusive, invidiously discriminatory, and retaliatory

1

work environment to exist based on national origin and sex discrimination, and retaliated against him when he complained, resulting in Plaintiff's constructive discharge.

2.      Plaintiff Lezcano was born in Cuba, and is of Cuban, Hispanic ethnicity. He has a Cuban accent, but he speaks fluent and clear English.  Defendants employed Plaintiff as a Personal Loan Specialist at the OneMain Financial Services, Inc. branch office in Longmont, Colorado. He was hired on approximately June 5, 2017 and was discharged on about September 11, 2018.  Defendants actively employ more than 15 persons in Colorado.

3.      Three other employees, all women,  non-Cuban, non-Hispanic and whiteworked at the Longmont branch office, which includes the female Branch Manager.  Plaintiff was the only man and self-identified Cuban/Hispanic employed at that location.

4.      Throughout his employment, the Branch Manager and other employees sexually harassed Plaintiff by engaging in unwelcome sexually charged and/or explicit sexually intimate and provocative comments and conversation. They also made offensive comments about his national origin, Cuban, and routinely ridiculed him because of his Hispanic accent.  Plaintiff complained to the Branch Manager and to Human Resources about the sexually charged and discriminatory environment.

5.      Thereafter, Plaintiff was subjected to such an offensive, abusive, overtly hostile, discriminatory, and retaliatory work environment, that it culminated in his termination or constructive discharge in violation of 42 U.S.C. 2000e, *et. seq*., including without limitation § 2000e-16(b)(a)(1) , and in violation of the Colorado Anti-Discrimination Act (CADA) C.R.S. 24-34-401 *et. seq,*

6.      Defendants' acts and omissions caused Plaintiff to suffer severe mental and emotional distress, anguish, upset and humiliation, and loss of employment, employment compensation, and

employment opportunities. He seeks awards of back pay, front pay, compensatory damages, attorneys' fees, costs of this action, and/or reinstatement and other equitable or remedial relief.

## II. JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over these Title VII claims under 28 U.S.C. § §1331 (Federal Question Jurisdiction), 28 U.S.C. §1343 (Civil Rights Jurisdiction), 28 U.S.C. §1332 (Diversity Jurisdiction), § 1367 (Supplemental Jurisdiction) and for a violation of 42 U.S.C. § 1981 (Race Jurisdiction). Plaintiff's claims are based on federal law and state law pursuant to the Colorado Civil Rights Act, C.R.S. § 24-34-401 *et seq.* (hereinafter CADA) because the claims arise under the laws of the United States and said claims are brought Such claims are brought to recover damages and to secure other relief for the deprivation of Plaintiff's civil rights.

8.     Defendants conduct business and have offices located in Colorado and are subject to the jurisdiction of this Court.

9.     Plaintiff has complied with all conditions precedent to the filing of the Colorado Anti-Discrimination Act claim and Title VII claims because he filed timely complaints with both the Colorado Civil Rights Division ("CCRD" Case No.: FE2019534433), and the Equal Employment Opportunity Commission ("EEOC" Case No.: 32A-2019-00166) and more than 180 days have passed since the filing of the claims. This lawsuit is filed within 90 days of receiving the Right to Sue letter from the Colorado Civil Rights Division. Plaintiff requested a right to sue letter from EEOC and has been told that it is forthcoming. Plaintiff will move to amend this Complaint upon receipt of the Right to Sue letter.

10.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(c) and 42 U.S.C. § 2000e-16b(a)(1), and § 2000e-5(f)(3), because the employment practices or omissions alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

### III. PARTIES

11.    Plaintiff Jesus A. Lezcano is a citizen of the U.S., and Colorado currently residing in Platteville, Colorado (hereinafter "Mr. Lezcano" or "Plaintiff").

12.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of 42 U.S.C.§ 2000e-5, and §2000-16b(a)(1), and of the CADA.

13.    Defendant OneMain General Services, Inc. is a Delaware corporation authorized to do business in the State of Colorado since April 4, 2017, with its principal place of business located at 601 NW Second Street, Evanston, IN 47708. Defendant is a subsidiary of Defendant OneMain Holdings, Inc. Defendant maintains numerous branch offices throughout Colorado.

14.    At all times relevant, Defendant OneMain Financial Services, Inc. was a Delaware corporation authorized to do  business in Colorado, with its principal place of business located at 601 NW Second Street, Evanston, IN 47708.  Although OneMain Financial Services, Inc. is a subsidiary of Defendant OneMain Holdings, Inc., it relinquished its Colorado authority on about January 14, 2019.

15.    At all times relevant, Defendant OneMain Financial Services, Inc. maintained a branch office located at 1834 Main Street, Longmont, CO 80501, where Plaintiff was hired and employed.

16.    Defendant OneMain Holdings, Inc. is a Delaware corporation, with its principal place of business located at 601 NW Second Street, Evanston, IN 47708, and it is all the foregoing Defendants' parent company. It maintains such financial services offices throughout the United States.

17.    The foregoing Defendants do business in Colorado and maintain numerous branch offices throughout Colorado.   Defendant is therefore subject to the personal jurisdiction of this Court.

18.    The Defendants were Plaintiff's employer and terminated his employment or caused his employment to be terminated.

## IV.  GENERAL ALLEGATIONS

19.     Plaintiff Lezcano is a male of Cuban/Hispanic heritage, is a citizen of the United States and the State of Colorado.

20.     Defendants provide consumer lending and related financial services to consumers through a network of branch offices nationwide, including Colorado.  Among their services, Defendants offer new loans, loan extensions and modifications, adjust delinquent accounts, and process loan payments from its customers.

21.     Plaintiff Lezcano was hired by Defendants on June 5, 2017, as a Personal Loan Specialist at the Longmont, Colorado branch of OneMain.

22.     Plaintiff's immediate supervisor was the Branch Manager of the Longmont Branch, who identifies as two or more races.  Two other women worked in the office as personal loan representatives and they have self-identified as white.

23.     The Defendants' District Manager, Brandon Reyna, supervised the Branch Managers, including the Branch Manager of the Longmont Branch.

24.     The Longmont Branch office is small.  Although each employee had a separate desk they were located in the same area; there was no privacy and conversations were overheard by everyone.

25.     Plaintiff's job evaluations reflected that his numbers for the sales of OneMain products were satisfactory and better, and he received a "meets expectations" rating in 2018.  Positive comments on his reviews included, but were not limited to, the following: that he was "…a pleasure to have in the office,' "…(h)as a great attitude with customers," was "…a great team player," "…makes the office a positive work environment," "…you make the office a friendly team environment and act with high integrity," "…you are always very professional and friendly to customers and team members," "… have a great attitude with the customer and know how to handle high stress."

26.     During his employment at the Longmont branch, Mr. Lezcano was subjected to sexual harassment, intentional harassment based on his national origin, and a hostile workplace environment. The Branch Manager made sexually explicit and charged sexual comments, jokes, and stories throughout Plaintiff's tenure.  Since the Branch is a small office, it was impossible for Plaintiff to avoid hearing the offensive sexual banter and conversations between the Branch Manager and the two other female employees.

27.     Moreover, the Branch Manager and another employee began to harass Plaintiff based on his national origin, color and accent, calling him "Ricky Ricardo" and likened him to Tony Montana, a Cuban drug smuggler in the movie Scarface, among other discriminatory comments.

28.     In addition, his three female coworkers used inappropriate and offensive language, which included without limitation, cursing, calling customers names such as Bitch, M-…f…, and other sexually offensive and crude names.

29.     Pursuant to the Personnel Manual, Plaintiff complained to the Branch Manager more than once about the cursing and offensive language, but she told him he would get used to the language and environment.

30.     Thereafter, the office environment deteriorated. Some of the co-workers, including the Branch Manager, began discussing salacious and intimate details of their sex lives.

31.     Plaintiff complained to the Branch Manager again but she brushed him off again.

32.     However, after Plaintiff complained, the graphic sexual discussions not only continued, but the Branch Manager became hostile to and critical of Plaintiff.  She began to ridicule him and single him out for reprimands. She began to complain about his accent despite the fact that Plaintiff speaks fluent and clear English.

33.     In 2018 the District Manager, Mr. Reyna, advised Plaintiff that he was doing well at the company and that his numbers were very good.

34.     Nevertheless, the Branch Manager was increasingly hostile to Plaintiff, and he did not receive a 2018 performance rating.

35.     After he complained about the unprofessional and sexualized office environment, he received a Coaching Plan alleging that he "stumbled" in meeting his goals.  He was overly scrutinized and his work was constantly monitored.  He was not allowed to take the same type of breaks that others in the office were allowed to have.

36.     Further, pursuant to company policy, Plaintiff had been spending about six hours a day studying for a license to sell financial insurance, yet he still met his goals. The other two employees were allowed to study for the exam at work and thus, failed to meet their goals, but they did not receive a coaching plan.

37.     The hostile environment accelerated, and the Branch Manager would yell and criticize Plaintiff in the presence of employees and others but did not yell at the other female employees.

38.     The Branch Manager wrongly issued a disciplinary action against Plaintiff after he took two hours of vacation leave to take his elderly mother to the doctor.  She did this despite the fact that Human Resources gave him permission for him to take the leave.

39.     The non-Cuban female employees were allowed to take time off for personal matters without complaint or discipline from the Branch Manager and without having to use personal leave.  These personal matters included taking children for haircuts, long lunches, shopping, and other personal activities.

40.     Throughout this time the Branch Manager and another employee continued to discuss explicit, salacious, and intimate details of their sex lives.  The Branch Manager typically initiated the discussions by bragging about details of her sex life, discussing highly sexualized behavior, and questioned other employees, including Plaintiff about their sex lives.  Plaintiff was asked about his sex life with his wife.  He did not respond and her comments were unwelcome.

41.     As required by the policy manual, Plaintiff again advised the Branch Manager that he was offended and uncomfortable with the language and content of the conversations. She told him he should get used to it.

42.     After Plaintiff told the Branch Manager that he was uncomfortable and offended about the environment, the Branch Manager became even more hostile and critical of him, and singled him out for reprimands. She yelled at him when she mistakenly thought that he made a mistake.  She did not treat the two white, female employees this way even though they made mistakes.

43.     The Branch Manager admitted that she was trying to control him.  She constantly singled him out and interrupted his work by demanding information from him, sometimes dozens of times a day. She did not treat the two female non-Hispanic employees this way.

44.     The Branch Manager and other employees ridiculed Plaintiff because he was Hispanic and made fun of his accent, even though he was the only employee who could assist Spanish-speaking customers.

45.     The Branch Manager and other employees made fun of Plaintiff's accent.  They also called him "Ricky Ricardo" after a character in a 1950-1960 TV show, despite the fact that Plaintiff speaks fluent, fluid and clear English.  They compared him to a corrupt drug smuggler Tony Montano portrayed in the move Scarface.  The Branch Manager and the two white employees did not ridicule each other based on their national origin, race or color.

46.     In addition, after Plaintiff complained about the offensive, sexually explicit discussions in the office, the Branch Manager went on the offensive.  For example, she told Plaintiff that customers complained that they could not understand him because of his accent.  This was never mentioned in earlier performance reviews.

47     Despite the criticism of his accent, Plaintiff had increased sales to all customers, and particularly to Spanish speaking customers as Plaintiff was the only Spanish speaker in the office.

This discipline occurred two months before he was wrongfully accused of cursing at his Branch Manager.

48.     The District Manager indicated that Plaintiff was ready for a promotion to a Senior Personal Loan Specialist because of his performance.  However, the Branch Manager vetoed the promotion after Plaintiff complained about the hostile sexually harassing environment in the office.

49.     On another occasion the Branch Manager screamed at Plaintiff, falsely alleging he had misappropriated money; afterwards the District Manager made her apologize to him.

50.     Ironically in view of the foregoing facts, in September 2019 the Branch Manager told Plaintiff that he was going to be fired for allegedly cursing "under his breath" about her.  This occurred after Plaintiff had complained about the cursing, vulgar language, and rampant sexual harassment initiated by the Branch Manager.  Plaintiff had not cursed at the Branch Manager or anyone else.  He never used that language at work and had complained about others who had done so—they had never been disciplined.

51.     Plaintiff was told he was going to be investigated and that the Branch Manager was recommending he be fired. Plaintiff was so shocked and upset by this false allegation, that he obtained permission to leave for the rest of the day.

52.     The Branch Manager spuriously accused Plaintiff of waiting in his car in the parking lot when he left the office and alleged that she was concerned for her safety.  Plaintiff was shocked by this false allegation that he had waited in the parking lot.

53.     The Branch Manager admitted that Plaintiff had never threatened anyone, he never participated in the offensive sexual conversation in the office, and he never responded to the ridicule inflicted by his coworkers (except to appropriately complain to the Branch Manager).  Despite performance evaluations praising his team efforts, suddenly the Branch Manager pretended to be afraid of Plaintiff.

54. Subsequently Human Resources contacted Plaintiff about whether he cursed in the office. He denied doing so. The HR employee told him they had audio and video of him in the office that day implying that the video could prove that he had cursed. Plaintiff eagerly asked that the video be produced because it would exonerate him. To the best of Plaintiff's knowledge, Defendants never reviewed the video—they never made it available to him.

55. After he went home Plaintiff reached out to District Manager Reyna. Mr. Reyna said that Plaintiff would be disciplined for allegedly cursing even though he was aware that Plaintiff's complaints about sexual and national origin harassment were never investigated and employees were never disciplined.

56. Plaintiff advised Mr. Reyna that he was concerned about his future with the organization, because of the number of times the Branch Manager had disciplined him for actions that all three female employees engaged in without retribution. His concern was magnified because he was falsely accused of cursing. He reported the hostile environment, sexual and national origin harassment, verbal abuse, and unwarranted discipline to Mr. Reyna and asked about his future. Mr. Reyna did not respond to the complaints but told Plaintiff that he should leave when the Manager said "I know you will land on your feet."

57. Thus, Plaintiff recognized that the hostile environment would not change and he was shocked when he was encouraged to resign by the District Manager.

58. No one advised Plaintiff that Defendants were going to investigate his allegations. He has never been told that there was any investigation.

59. After Plaintiff was forced to leave employment, Defendants alleged that they had "investigated" Plaintiff's complaints and found only that the other employees had used inappropriate language. To the best of Plaintiff's knowledge, none of the female, non-Hispanic and non-Cuban employees were ever disciplined.

60.    Despite the rampant sexual harassing environment and the racist comments about Plaintiff, no employee was disciplined, but Plaintiff was told he would be fired or written up for allegedly swearing under his breath one time, an allegation he denied.

61.    The sexual and national origin harassment and discrimination against Plaintiff was pervasive and continuing and each created a hostile environment. The Defendants' tolerance of egregious sexual, racial, and national origin harassment, discrimination, the lack of support from supervisors and from Human Resources, Defendants' intolerance for Plaintiff, and the District Manager's statement that Plaintiff would be disciplined for cursing but if he left he would "land on his feet, " made it clear that there was no future for Plaintiff at Defendant's workplace. As a result, Plaintiff was constructively discharged.

## COUNT I

### VIOLATION OF TITLE VII and the COLORADO CIVIL RIGHTS ACT (CADA)
### (Discrimination Based on Sex)

62.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

63.    Plaintiff was subjected to disparate treatment based on his sex, male.  He did not receive the same benefits and working conditions as the female personal loan specialists.

64.    Plaintiff was wrongfully disciplined for engaging in activities that the female employees routinely participated in and they were not disciplined.

65.    The Branch Manager harassed Plaintiff and treated him differently than the female employees.

66.    Plaintiff was disciplined and told he was going to be fired for allegedly cursing under his breath at work (which he denied), but the three female employees routinely cursed, used vulgar

language, called customers foul names, and discussed sexually explicit topics. They were not discipline.

67.     Although Plaintiff had been recommended for promotions by the District Manager, the female Branch Manager vetoed the promotions, despite the fact that Plaintiff was successful as a personal loan specialist.

68.     Plaintiff was discharged from his position even though women who engaged in worse behavior than that alleged against him were never disciplined; they had better working conditions, and received better benefits than Plaintiff.

69.     Plaintiff has been damaged by Defendants' acts and omissions, as stated hereinabove.

70.     Defendants' actions were taken with malice and/or reckless indifference to Plaintiff's federally protected rights under Title VII and under the Colorado Anti-Discrimination Act. C.R.S. 24-34-401 *et seq.*

71.     Defendants willful and intentional actions caused Plaintiff to suffer emotional distress, anguish, harm, and pain and suffering  and monetary damages of lost wages and benefits and loss of reputation.

72.      Defendants' actions and those of its supervising Branch Manager were taken with malice and/or reckless indifference to Plaintiff's protected civil rights and he is entitled to receive punitive damages.

## COUNT II

### VIOLATION OF TITLE VII AND CADA
### (Sexual harassment and hostile environment)

73.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

74.     As described above in the Complaint, Plaintiff was subjected to abuse, sexual harassment, and discrimination, based on his sex, male.

75.     Plaintiff was sexually harassed at work by the female Branch Manager and other female employees.

76.     The harassment perpetuated by the Branch Manager and others was pervasive and/or severe, was sexually offensive and was based on plaintiff's gender.  He was the only male employee in the office.

77.     The harassment was such that a reasonable person would have perceived it to interfere with Plaintiff's work and constitute a hostile work environment.

78.     The sexual harassment and gender discrimination unwelcome by the Plaintiff.

79.     Because the harassment was perpetrated by a supervisor as defined by law, Defendant is liable for the Branch Manager's conduct.

80.     Plaintiff complained, repeatedly, to the Branch Manager about the sexually harassing and hostile environment as required by the personnel manual but the manager told him he would get used to it.

81.     Defendant knew that Plaintiff was being harassed but did not take steps reasonably designed to stop or prevent the harassment.

82.     Plaintiff was terminated from his position for complaining about the sexual harassment and other forms of discrimination.

83.     The harassment was designed to force Plaintiff to leave employment and he was constructively discharged/terminated.

84.     The willful and intentional actions of Defendants' employees caused Plaintiff to suffer emotional distress, anguish, harm, and pain and suffering   and monetary damages of lost wages and benefits and loss of reputation.

85.    The Defendants' actions and those of its supervising Branch Manager were taken with malice and/or reckless indifference to Plaintiff's protected civil rights and he is entitled to receive punitive damages under Title VII and under the Colorado Anti-Discrimination Act.

### COUNT III

### VIOLATION OF CADA AND TITLE VII-RETALIATION

86.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

87.    Through his Complaint of gender discrimination and harassment Plaintiff engaged in protected activity.

88.    As required by the personnel manual he complained to the Branch Manager and also to the District Manager, Mr. Reyna.

89.    After complaining to the Branch Manager, plaintiff was subjected to harassment that would have dissuaded a reasonable worker from making or supporting a charge of discrimination, and he subsequently repeatedly received unwarranted discipline, culminating in the Branch Manager advising Plaintiff that he was going to be discharged/terminated from employment.

90.    After reporting the harassment to the District Manager, Mr. Reyna encouraged Plaintiff to leave employment; ultimately ending the employment through a constructive discharge as a result of his treatment following his protected activity in violation of the anti-retaliation provisions of CADA and Title VII.

91.    Plaintiff was subjected to abuse, harassment, discrimination, and retaliatory acts that would have dissuaded a reasonable worker from making or supporting a charge of discrimination based on his sex, and his employment was terminated as a result of plaintiff engaging in such protected activity, in violation of the anti-retaliation provisions of Title VII and CADA.

92.     The willful and intentional actions of Defendant caused Plaintiff to suffer emotional

distress, anguish, harm, and pain and suffering and monetary damages of lost wages and benefits

and loss of reputation.

93.     The Defendant's actions and those of its supervising Branch Manager were taken with

malice and/or reckless indifference to Plaintiff's protected civil rights and he is entitled to

receive punitive damages under Title VII and under the Colorado Anti-Discrimination Act.

## COUNT IV

### VIOLATION OF TITLE VII AND CADA
### (Discrimination based on national origin/race/color)

94.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs

of the Complaint.

95.     Plaintiff was subjected to disparate treatment based on his national origin, race and color,

Cuban-Hispanic and brown.  He did not receive the same benefits and working conditions as the

white non-Hispanic personal loan specialists.

96.      The Branch Manager treated Plaintiff poorly and differently than the other non-Hispanic,

white employees as described in this Complaint.

97.     The Branch Manager and other employees ridiculed Plaintiff about his Cuban accent

although he spoke fluent and clear English. They mocked his nationality and accent repeatedly

calling him "Ricky Ricardo" and compared him to Tony Montana, a drug smuggler in the movie

Scarface. They did not mock or denigrate each other.

98.     Plaintiff was disciplined and told he was going to be fired for allegedly cursing under his

breath at work (which he denied) but all three white, non- Hispanic, non-Cuban, employees

routinely cursed, used vulgar language, called customers foul names, and two of them discussed

sexually explicit topics. They were not disciplined. These employees were not Cuban or solely Hispanic and were white.

100.    Although Plaintiff had been recommended for promotions by the District Manager, the non-Cuban, non-Hispanic, white Branch Manager vetoed the promotions, despite the fact that Plaintiff was successful as a personal loan specialist.

101.    Plaintiff was disciplined for activities that all three non-Cuban/non-Hispanic/white women in the office engaged in without discipline or penalty.

102.    Plaintiff has been damaged by Defendants' acts and omissions, as stated hereinabove.

103.    Defendants' actions were taken with malice and/or reckless indifference to Plaintiff's federally protected rights under Title VII and the CADA, § 24-34-301 *et. seq.*

104.    The willful and intentional actions of Defendant caused Plaintiff to suffer emotional distress, anguish, harm, and pain and suffering   and monetary damages of lost wages and benefits and loss of reputation.

105.    The Defendants' actions and those of its supervising Branch Manager were taken with malice and/or reckless indifference to Plaintiff's protected civil rights and he is entitled to receive punitive damages.

## COUNT V

### VIOLATION OF TITLE VII AND CADA
### (Harassment and hostile environment based on national origin/race/color)

106.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

107.    As described above in the Complaint, Plaintiff was subjected to abuse, harassment, and discrimination, based on his national origin, Cuban, Hispanic and his color-brown.

108.    Plaintiff was harassed at work by the female Branch Manager and other female employees.

109.    The harassment perpetuated by the Branch Manager and others was offensive, pervasive and/or severe, and was based on Plaintiff's national origin and race, Hispanic, Cuban and his color, brown.

110.    The harassment was such that a reasonable person would have perceived it to interfere with Plaintiff's work and constitute a hostile work environment.

111.     Because the harassment was perpetrated by a supervisor as defined by law, Defendant is liable for the Branch Manager's egregious conduct.

112.    Plaintiff complained to the District Manager, Mr. Reyna, about the references to and ridicule of his national origin, Cuban and Hispanic, and his accent. The Defendants did not take any action against the Branch Manager or others.

113.    Defendants knew that Plaintiff was being harassed but did not take steps reasonably designed to stop or prevent the harassment, and therefore, Defendants are liable for the conduct.

114.    Defendant' willful and intentional actions caused Plaintiff to further suffer emotional distress, anguish, harm, and pain and suffering  and monetary damages of lost wages and benefits and loss of reputation.

115.    The Defendants' actions and those of its supervising Branch Manager were taken with malice and/or reckless indifference to Plaintiff's protected civil rights and he is entitled to receive punitive damages.

## COUNT VI.

### (Retaliation Based on National Origin, Cuban/Hispanic And Color)

116.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

117.    By and through his Charge of Discrimination and his Complaints of national origin/

Cuban/Hispanic/color discrimination and harassment plaintiff engaged in protected activity.

118.    As required by the personnel manual he complained to the Branch Manager and also to

the District Manager.

119.    After complaining to the Branch Manager plaintiff was subjected to harassment that

would have dissuaded a reasonable worker from making or supporting a charge of

discrimination, and he subsequently received repeated and unwarranted criticism and discipline,

culminating in the Branch Manager advising Plaintiff that he was going to be terminated from

employment.

120.    After reporting the harassment to the District Manage, Mr. Reyna responded by

encouraging Plaintiff to leave employment; ultimately ending the employment through a

constructive discharge as a result of his treatment following his protected activity in violation of

the anti-retaliation provisions of CADA and Title VII.

121.    Plaintiff was subjected to abuse, harassment, discrimination, and retaliatory acts that would

have dissuaded a reasonable worker from making or supporting a charge of discrimination based on

his national origin, Cuban, Hispanic and color  and his employment was terminated as a result of

Plaintiff engaging in such protected activity, in violation of the anti-retaliation provisions of Title

VII and CADA.

122.    The willful and intentional actions of Defendant caused Plaintiff to suffer emotional

distress, anguish, harm, and pain and suffering   and monetary damages of lost wages and

benefits and loss of reputation.

123.    The Defendants' actions and those of its supervising Branch Manager were taken with

malice and/or reckless indifference to Plaintiff's protected civil rights and he is entitled to

receive punitive damages under Title VII and under the CADA.

## COUNT VII

### (42 U.S.C. § 1981 Violation-Termination of Contract on the Basis of Race/Color)

124.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

125.    Defendants' termination of Plaintiff's employment contract was motivated by Plaintiff's race/color in violation of 42 U.S.C. § 1981.

126.    Plaintiff had a right to enter into, and to maintain, a contract for employment with Defendant with the reasonable expectation that the Defendants, their principals, managers and supervisors would treat him fairly and lawfully and without discrimination or retaliation in compliance with all requirements of law, including but not limited to, Plaintiff's right to be treated equally and fairly under the law,

127.    Plaintiff had a right to expect that he would have equal access to, and enjoyment of, all of the rights, privileges and benefits of this employment contract and to be free from discrimination, retaliatory threats and unreasonable and unlawful discharge due to his ethnic status as a lawfully employed, Cuban, Hispanic/brown.

128.    At all times relevant, Plaintiff had a reasonable expectation or property interest in the terms and conditions of his ongoing or continued employment contract and to be free of such workplace misconduct, retaliation, and discrimination, all of which the Defendants and their principals, managers and supervisors summarily disregarded and violated.

129.    Defendants' willful and intentional actions caused Plaintiff to suffer emotional distress, anguish, harm, and pain and suffering   and monetary damages of lost wages and benefits and loss of reputation.

130.    The Defendants' actions and those of its supervising Branch Manager were taken with malice and/or reckless indifference to Plaintiff's protected civil rights and he is entitled to receive punitive damages.

## COUNT VII

### Hostile Environment and Constructive Discharge

131.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

132.    The harassing conduct by Defendants toward Plaintiff was unwelcome, pervasive and/or severe and was based on Plaintiff's gender and his national origin.

133.    The harassment was such that a reasonable man would have perceived the harassment to interfere with his work and constitutes a hostile environment.

134.     Because the harassment was perpetrated by a "supervisor" as defined by law, and because Plaintiff suffered a tangible employment action as a result of the harassing conduct, Defendant is liable under the Colorado Anti-Discrimination Act and Title VII.

135.    Plaintiff's constructive discharge was the direct result of the harassment he suffered.

136.    Plaintiff has been injured by Defendants' actions, which injuries include both loss of pay and benefits and emotional distress.

137.    Defendants' actions were taken with malice and/or reckless indifference to Plaintiff's federally protected civil rights under the Colorado Anti-Discrimination Act and Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgement in his favor:

(a)    An award of back and front pay;

(b)    An award of pain and suffering and emotional distress, compensatory and consequential damages as allowed;

20

(c)     An award of injunctive or declaratory relief;

(d)     An award for the costs of this action, together with reasonable attorneys'

fees;

(e)     An award of prejudgment and post judgment interest as provided for by

law; and

(f)     The Defendant's actions and those of its supervising Branch Manager were

taken with malice and/or reckless indifference to plaintiffs protected civil rights and

Plaintiff is entitled to receive punitive damages

(g)      Granting such other or further relief as the Court deems necessary or

appropriate, including Plaintiff's reinstatement with a "no retaliation" order in effect.

## REQUEST FOR JURY TRIAL

Plaintiff hereby makes his request for a jury trial for all claims raised in this action.

This 24th day of January 2020.

Respectfully submitted,

*/s/ Richard K. Blundell*
Richard K. Blundell, Esq.
Colo. Reg. # 10358
3535 West 12th Street, Suite D
Greeley, CO 80634
Tel: 970-356-8900
Fax: 970-353-9977
Email: rick@rkblaw.net

*/s/ Robin Cochran*
Robin Cochran Esq.
Colo. Reg. #12665
3535 West 12th Street, Suite D
Greeley, CO 80634
Tel: 970-356-8900
Fax: 970-353-9977
Email: Robincochranlaw@aol.com
COUNSEL FOR PLAINTIFF

21

PLAINTIFF'S ADDRESS
Jesus A. Lezcano Sr.
611 Cultivator Lane
Platteville, CO 80651